## MIOCENE DITCH CO. v. LYNG.

### (Second Division. Nome. July 23, 1904.)

#### No. 994.

EMINENT DOMAIN—CORPORATIONS—FOREIGN CORPORATIONS.

> A corporation organized under the laws of the state of California, coming into Alaska and complying with the laws of Congress relating to foreign corporations doing business in Alaska, *held* to have no power of eminent domain to condemn private property for the support and right of way for mining ditches and flumes. The provisions of the Code apply to domestic corporations only, not to foreign corporations.

> [Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Eminent Domain, § 36.]

The demurrer of defendants to the amended complaint stands upon three grounds, to wit: (1) The court has not jurisdiction of the subject of the action. (2) That the amended complaint does not state facts sufficient to constitute a cause of action. (3) That said complaint does not state a public use which will authorize the plaintiff to exercise the right of eminent domain.

The amended complaint alleges that the plaintiff is a corporation duly organized and existing under and by virtue of the laws of the state of California, and is engaged in and is authorized to do business in the District of Alaska; that said corporation by its charter is authorized to appropriate water and water rights, and to build canals, ditches, flumes, and aqueducts, and to lay pipes for supplying mines with water for the general use of the public in said District of Alaska, and that said plaintiff has constructed a system of ditches, flumes, and pipe lines conveying water from Nome river and its tributaries of Snake river, and extending along the left limit of Dexter creek and around and across Deer gulch, a tributary of Dexter creek, to the left fork of Dexter creek; that the

defendants are owners of a placer mining claim situate on Dexter creek, known as "No. 6 Dexter Creek"; that said Dexter creek from its source to its mouth contains large deposits of dirt and gravel containing gold in paying quantities, and in order that the same can be mined and extracted therefrom it is necessary to bring water in ditches, canals, and pipe lines from a long distance in the manner in which it is done by the plaintiffs; that the natural flow of Dexter creek is entirely insufficient with which to sluice said deposits, and a large portion of the time said Dexter creek contains no water whatever; that below said No. 6 to the mouth of the creek there are deposits of gold-bearing dirt that cannot be profitably mined otherwise than with a large volume of water; that for the purpose of enabling the plaintiff corporation to convey its water to the claims below said No. 6 it is necessary that the plaintiff have a right of way across said No. 6, the property of defendants, and that the right of way covers a strip 20 feet in width and of the length of the claim, and comprises in all an area of 0.626 acres.

Then follows the prayer that the land required for said right of way be condemned, and commissioners be appointed to assess the damages the defendants may sustain by reason of the appropriation of said right of way by the plaintiff.

Ira D. Orton and James W. Bell, for plaintiff.

John L. McGinn and C. D. Murane, for defendant.

MOORE, District Judge. As stated in the amended complaint, the plaintiff corporation is a foreign corporation with respect to the District of Alaska, and the question of the jurisdiction of this court to entertain condemnation proceedings, brought at the instance of said corporation, at once arises.

The extent of the power belonging to the corporation in Alaska is described in the allegation of the complaint that it is "authorized to do business in the District of Alaska." By

what channel and from what source the authority was derived is not indicated in the said complaint, unless the next allegation following the allegation just quoted serves that purpose. This averment recites that by its charter the corporation has authority to appropriate water and water rights, to build canals, ditches, etc., for supplying mines with water, "for the general use of the public in said district."

Section 210 of chapter 22 of the Civil Code of Alaska, in the first paragraph thereof, impliedly designates the persons and associations of persons who may exercise the right of eminent domain in Alaska. It is in this language:

"The complaint must contain the name of the corporation, association, commission or person in charge of the public use for which the property is sought, who must be styled plaintiff."

Does the word "corporation" in this paragraph comprehend foreign corporations, and are such corporations entitled to enjoy the benefits and privileges conferred by the Alaska statute relating to eminent domain?

Viewing this section apart from any other provision of the Alaska Code, it must be interpreted as applying only to domestic corporations; that is to say, to artificial persons or bodies corporate created by the government of the United States pursuant to its Constitution and laws. That this is the true interpretation of the section is manifest further by a reading of the chapter of the Code defining the acts to be done and requisites to be observed by foreign corporations before they may do business in Alaska. At best, their compliance with the provisions of this chapter (No. 23 of the Code) gives them the right "to do business within the district," and that alone. Nowhere in the Code can we find any provision which delegates to a foreign corporation the sovereign right of eminent domain inhering in the state, or expresses in any way the consent of the Legislature of the United States to its exercising this high power of sovereignty.

But says Thompson in his great work on the Law of Private Corporations (volume 6, § 7932):

"The power of a private corporation to acquire private property for the public purposes for which it may be chartered is a power which comes to it alone through delegation of the state of its sovereign right of eminent domain. The power cannot, therefore, be exercised by a foreign corporation on a mere principle of comity, because it will never be presumed, in the absence of affirmative legislation, that the state delegates any part of its sovereignty."

Mr. Thompson, to the foregoing statement, adds this proposition:

"It may be stated with confidence in every case, that this power cannot be exercised by a corporation created under the laws of one state or country without the consent of the Legislature of that other state or country affirmatively expressed."

It follows, then, that the plaintiff corporation, because of its lack of authority as a foreign corporation to exercise the powers of eminent domain within the District of Alaska, cannot invoke the jurisdiction of this court in its effort to condemn private property for public uses, or indeed for any use whatever.

Referring to the complaint, we discover an allegation that its charter, granted by the state of California, authorizes it "to appropriate water and water rights, and to build canals, ditches, flumes, and aqueducts, and to lay pipes for supplying mines with water, for the general use of the public in said District of Alaska," but beyond this statement of what is a conclusion of law the complaint omits to state any design on its part to supply the owners of mines on Dexter creek with water from its proposed ditch, or that said ditch company itself is not the owner of said claims, or to what extent the public would be benefited by the ditch, or that the owners of said mines are desirous of mining their claims, and that the corporation cannot secure to them and the public the necessary supply of water to operate their mines in any other way than

by authorizing the condemnation of private property. "The question whether the particular use is public or not is for the court." Ency. Law (2d Ed.) p. 1069. The complaint does not state facts sufficient to enable the court to definitely determine this question. "Extreme accuracy and the utmost strictness are essential in pursuing the statutory authority where it exists, and must so appear on the face of the proceedings." Ency. P. & P. vol. 7; p. 469.

The considerations herein set forth constrain us to direct that an order be drawn sustaining the demurrer on all its grounds.